CASES ARGUED AND DETERMINED

# SUPREME COURT OF MISSISSIPPI

## OCTOBER TERM, 1921.

---

BOARD OF SUP'RS OF HARRISON COUNTY *v*. GULF COAST
MILITARY ACADEMY.

[89 South. 617, No. 21764.]

TAXATION. *Statute exempts property of incorporated college from tax-
ation, although operated for private profit, and does not conflict
with constitutional provisions relating to uniform and equal
taxation, taxation of private corporations, and that the right to
tax them shall not be surrendered.*

> Under paragraph D, section 4251, Code of 1906 (section 6878, Hem-
> ingway's Code), the property of any incorporated college or in-
> stitution for the education of youth used directly and exclusively
> for such purpose is exempt from taxation; and this is true, re-
> gardless of whether or not the institution is operated for private
> profit. Such exemption is not in conflict with sections 112, 181,
> and 182 of the Constitution of 1890.

APPEAL from circuit court of Harrison county.
HON. D. M. GRAHAM, Judge.
Tax proceeding in which the Board of Supervisors of
Harrison County appeals from a judgment exempting from
taxation property owned by the Gulf Coast Military Acade-
my. Affirmed.

(729)

*M. D. Brown,* for appellant.

The general rule as to exemptions is that persons or corporation seeking exemption from taxation must bring themselves strictly within the letter of the statute. All reasonable doubts are resolved against the exemption, and under the above statute the rule applies. *Adams County* v. *Catholic Diocese of Natchez,* 71 So. 19; *Ridgeley Lodge* v. *Redus,* 78 Miss. 352.

It is true that in the case of *Adams County* v. *Catholic Diocese of Natchez,* that the court held that this property was exempt from taxation, because all of the rents and profits derived from the institution went back to charitable purposes. *Adams County* v. *Catholic Diocese,* 71 So., at page 19, in further discussing this case, as to the intention of the legislature, Judge Holden uses the following language: "In this we disagree with the learned counsel of the appellant, as it is clear that section 4252, Code of 1906, does not conflict with, nor curtail the exemption given in 4251, but simply extends the exemption so as to apply to property owned by religious societies when not used exclusively for the purposes of the society but producing revenue, provided the revenue is used for benevolent purposes and not for profit. We concede that statutes exempting persons and property from taxation must be strictly construed, but it is also true that there is a relaxation of the rule in the case of statutes of exemption applicable to religious and educational institutions, and that the supreme test is in the intent of the legislature." In *State* v. *Fisk University,* 87 Tenn. 241, 10 S. W. 286, the court holds: "The intention of the legislature must govern in ascertaining the extent of tax exemptions, and when the exemption is to religious, scientific, literary, and educational institutions the same strict construction will not be indulged in that would be to corporations created for private gain or profit. *Adams Co.* v. *Catholic Diocese of Natchez,* 71 So. 19.

This case stresses and emphasizes the fact that the institutions which are exempt from taxation apply to religious and educational institutions operating not for profit, and it cannot be contended, with any consistency, that appellee is such an institution, that is, one operating not for profit.

Counsel no doubt will lay great stress on the case of *Preston* v. *The City of Jackson,* as controlling in the instant case. In the case of *Preston* v. *The City of Jackson,* 93 Miss. 356, 47 So. 547, it was held that Belhaven was exempt from taxation. In this case the declaration alleges that during the entire year of 1907 and some years prior thereto Preston was the sole owner of Belhaven College, an educational institution, and that the property in question was used during the entire year directly and exclusively for educational purposes and therefore was not subject to *ad valorem* tax, being exempt under paragraph "D," section 4251, Code of 1906, and which institution as stated by the declaration, was used directly and exclusively for educational purposes within the meaning of the statute. Sec. 4251, Code 1906.

The Preston case is not controlling nor of any great weight in this case, because the question involved in that case was whether the exemption applied to corporations and individuals alike, being the only point that was properly before the court, and the court held that the same rule applied to an individual as to a corporation.

In reaching the conclusion in the Preston case the history of legislation with reference to liberality of legislation toward educational institutions of Mississipppi was dwelt on at great length. However, in all of this discussion and reference to authorities there was not a school or educational institution of the kind and character of appellee referred to, to-wit (Quoting for the charter) : "To carry on and operate a high class military school, during the fall, winter and spring; and if it is desirable to operate a summer Naval School." In connection with the school it will operate a dormitory and boarding department, a dormitory,

a place, a room, a building, to sleep in; and a boarding department, a department for boarders—in other words, to operate a hotel. Under this charter, if desirable, this appellee can operate a commodious and elaborate hotel in the summer season, when the hotel season is best on the coast in full competition with all other hotels on the coast and be exempt from taxation. A mere statement of the case carries with it a refutation of the claim of the appellee; that is, that it has this privilege under its charter, but notwithstanding it is exempt from taxation.

As shown by the record, all of this property is located in the rural separate school district of Harrison county, Mississippi, with special assessments, to-wit, twelve thousand dollars for public school buildings, a bonded indebtedness, and a special ten mill levy for carrying on the public schools. Even should the court hold that this property is exempt from the *ad valorem* tax, we contend that it would not be exempt from paying its part of this bonded indebtedness and the special ten mill levy for operating the school, and we cite in support of this contention under the head of exemptions from taxations, 12 A. & E. Ency. of Law, page 316, paragraph (b), in discusisng the question of exemptions of public property as follows:

(b)    Express exemption from assessments; a power to grant; it is not to be implied from the rule laid down above that the legislature has not power to exempt from local assessment as well as from general taxation, for in the absence of any constitutional restrictions, such a power doubtless exists. It has been held, however, that a constitutional provision that certain property may be exempted from taxation by the general assembly impliedly forbids any exemption from special assessments. 12 A. & E. Ency. of Law, page 316.

We respectfully submit that this institution is not such an institution as intended by the legislature to be exempt from taxation.

*W. H. Watkins, Hanun, Gardner & Chas. Scott Brown* for appellee.

The operation of a dormitory, as well as each other feature of which counsel for appellant complains so strongly is a necessary ingredient of, and incidental to, the operation of a military school. The students must sleep, for which purpose dormitories are necessary; they must eat, hence mess halls. To study, they must have books; and to embody the intended military character, cadets must perforce be supplied with uniforms. Dormitories occupied by students, buildings used as dining halls, observatory buildings, houses furnished by a college for officers of its observatory, adjoining land necessary for the proper use of same, and land used as a college yard, are non-taxable." *Yale University* v. *Town of New Haven*, 42 A. 87, 43 L. R. A. 490.

In *People ex rel, Mt. Pleasant Academy* v. *Metzger*, 98 App. Div. 237 (affirmed in 181 N. Y. 511, 73 N. E. 1130) buildings occupied by the principal as a residence, as well as the sleeping rooms for students, drill rooms, armories, stables, etc., all connected with a military school, were held to be used exclusively for educational purposes. In *Wylie* v. *Montreal*, 12 Can. S. C. 384, a private boarding school for girls was declared to fall within the exemption.

In *Blackburn* v. *Houston*, 39 La. Ann. 592, 2 So. 193, POCHE, J., said: "It stands to reason that a college with some two or three hundred scholars, who would also be boarders, would not loose its character as being used exclusively for school purposes, because, forsooth, it would contain rooms for the accommodation of necessary teachers, as well as for the servants required for the preparation of the food for teachers as well as for scholars. It is too plain in our minds for argument that all these incidents are necessary adjuncts to property used exclusively for school purposes."

These authorities could be multiplied indefinitely but we have already considered the subject of usage of school prop-

erty with more attention than it deserves. However, the learned counsel for appellant, evidently through a misconception of the case, has advanced a line of argument that is wholly foreign to the issue involved, and not at all relevant or pertinent to the subject now before the court. To say that appellee is operating a summer boarding house in connection with the school, or that under this charter, if desirable this appellee can operate a commodious and elaborate hotel in the summer season, when the hotel season is best on the coast, in full competition with all other hotels on the coast, and be exempt from taxation goes completely outside the record and into the realm of imagination, injects into the case points or facts that not only are not in issue, but that actually do not exist; and is wholly and absolutely absurd. There is no evidence whatever that appellee has ever tried to do, or remotely contemplates doing, any of these things; so counsel could with equal truth, reason and propriety argue that a religious corporation, a church, is not entitled to exemption under the statute because the members might desecrate the provisions of their charter by conducting a blind tiger or a gambling house.

Should appellee ever attempt to do any of the things counsel for appellant fears it might do under its charter, it is needless to say that its property would thereupon and thereby become liable to taxation, immediately.

Touching appellant's objection that the property in question is not exempt from taxation because appellee is conducting its school for profit and therefore not solely and exclusively as an educational institution, this objection is without merit. From the consensus of authorities on this point the conclusion is inescapable that the phrase solely and exclusively for educational purposes, and not for profit, has reference to the primary and inherent use as against a mere secondary or incidental use. For illustration, where the profits of an educational institution are derived directly from its business as a school, the primary object or use is the operation of a school or educational institution. But if the profits are derived indirectly as by the rental or leas-

ing of school property, whether it be property actually used for school purposes or other property owned by an educational institution and carried as a separate investment, then in such event the source of such profits constitute the secondary object or purpose of the school, even though such profits are put back into the school. *Chicago* v. *People*, 80 Ill. 384.

In fact this point has been well considered and ably expressed in a leading Louisiana case, where the court construed article 207 of the Constitution of 1879, exempting from taxation all property or buildings used exclusively for colleges or other school purposes, provided such property be not used or leased for the purpose of private or corporate profits or income. *City of Indianapolis* v. *Sturdevant*, 24 Ins. 391; *State ex rel. Cunningham* v. *Board of Assessors*, 26 So. 873.

To avoid unnecessarily lengthening this brief, we omit other authorities that could be cited on these points, but respectfully refer the court to the very able notes to *Preston* v. *City of Jackson* (Miss.), 21 L. R. A. (N. S.) 164(, and *State ex rel. Spillers* v. *Johnston*, ib. 171.

The foregoing cases illustrate that in getti*ng at the* meaning of the constitutional and statutory provisions for the exemption of property from taxation, courts while applying the rules of strict construction, yet take as the road the guidepost of common sense points.

*Watkins, Watkins & Eager,* for appellee.

On the argument of this case Mr. Justice ANDERSON raised the question as to whether or not the legislative exemption from taxation under discussion did or did not offend section 182 of the Constitution of the state of Mississippi adopted in 1890. No reference was made to this section in the brief filed by counsel for the appellant, nor did the distinguished counsel who argued the case for the appellant make any reference thereto.

It was claimed, however, that the section in question violated section 181 of the Constitution of the state of Miss-

issippi. We take it, however, that it was made perfectly clear to the court on the argument that paragraph d, section 6868 of Hemingway's Code in no sense violated section 181 of the constitution. In providing certain exemp-tions from taxation, the provision is as follows: "All prop-erty, real or personal, belonging to any college or institu-tion for the education of youths, used directly and exclu-sively for such purpose."

It may be taken as the settled law in Mississippi that this provision in respect to exemption of property from tax-ation, as well as the other numerous provisions contained in the Revenue chapter of our code, are in harmony with the section referred to since the only purpose of the section was to prevent discrimination between the taxation of prop-erty owned by individuals and that owned by corporations. *Jackson* v. *Preston,* 93 Miss. 366, 47 So. 547, 21 L. R. A. (N. S.) 164; *Adams County* v. *Diocese of Natchez,* 110 Miss. 890.

"Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by Law."

In *Mississippi Mills* v. *Cook,* 56 Miss. 40, in construing the section in question the court used the following lan-guage: "The section does not necessarily require that all property in the state at the time of the assessment must be taxed. It does not take away from the legislature the discretion to select the subjects. But when the selection is made, all property of that sort must bear its proportion-al part of the burden."

The constitution of California contained these words, viz: "All property in this state shall be taxed in propor-tion to its value." In *The People* v. *Coleman,* 4 Cal. 46, 60 Am. Dec. 581, it was held in a well reasoned opinion, that the legislature may select or exempt such property as in its discretion it may think proper, for taxation." This ruling was followed in *High* v. *Shoemaker,* 22 Cal. 363. *People* v. *McCreery,* 34 Cal. 432; *Fletcher* v. *Oliver,* 25 Ark. 289.

This doctrine was approved and reaffirmed by Mr. Justice WHITFIELD in the case of *Adams* v. *Railroad Company*, 77 Miss. 194, although he overruled the last-mentioned case but the question upon which the case was overruled was in respect to section 13 of the Constitution of 1869, and not section 20. The doctrine was also approved by Mr. Justice WHITFIELD in the case of *Adams, State Revenue Agent*, v. *Tombigbee Mills*, 78 Miss. 676. We refer also to the many cases cited by counsel for the appellee in the original brief. We may take it however, as well assumed that the legislative act under discussion does not violate section 181 of the Constitution of the state of Mississippi.

Let us see, now, as to whether or not the provision of the Code in question violates section 182 of the Constitution. It will be noted that the appellee does not claim exemption from liability for taxation. The appellee merely claims that as the law now stands, its property is exempted from taxation. The appellee does not claim that it has any contract, express or implied, with the state of Mississippi acting through the legislature, that its property may not be subject to taxation. The appellee merely claims that the legislature, for purposes which were satisfactory to it, temporarily has taken its property off of the assessment rolls and has exempted it temporarily, or so long as it may see fit, from taxation. but that the legislature may place the property back on the assessment roll at any time it may see fit. In other words, the appellee does not claim any exemption from liability from taxation, but claims that by reason of the provision of the law in question, it is for the present exempted from taxation. The appellee, in other words, does not claim that the legislature of the state of Mississippi has parted with its right to tax the appellee's property for all time to come. The legislature can meet tomorrow and repeal the enactment in question, upon which the appellee's property would again be placed upon the assessment roll. It is subject to taxation; that is to say, it has no irrepealable grant or contract freeing it from liability for taxes. Section 182 of the Constitution of the

state of Mississippi was intended to prohibit irrepealable grants of exemption from liability for taxation, except for the very limited period set out in the section. A history of this particular provision of the Constitution will make this perfectly clear.

The predecessor of section 182 of the Mississippi state Constitution is found in section 13, article 12, of the Constitution of 1869, which was in the following language: "The property of all corporations for pecuniary profits shall be subject to taxation the same as that of individuals."

This section came under construction in the case of *Mississippi Mill* v. *Cook,* 56 Miss. 40. In that case in 1872 the Mississippi legislature passed an act exempting from liability for taxes the property of factories for a period of ten years. In 1873 the Mississippi Mills, at Wesson, having lost its factory through destruction by fire, and being anxious to rebuild, obtained from the legislature of the state of Mississippi an act extending to it the benefit of the act of 1872 to which it was not entitled at the time of the passage of the act because it was already then in existence. In 1877 the legislature of the state of Mississippi passed an act repealing the exemption from taxation acquired or claimed to have been acquired by the Mississippi Mills in the Act of 1873, and the question was squarely presented as to whether or not the Mississippi Mills had an irrepealable exemption by reason of the passage of the Act of 1873, and the supreme court of the state of Mississippi in that case decided that under section 13, article 12, of the Constitution of the state of Mississippi, above referred to, that the legislature of the state of Mississippi could not grant an irrepealable exemption from taxation; that it could grant exemption from taxation, but not exemption from liability to taxation; and that any act purporting to exempt the property of a corporation or an individual, for that matter, from taxation was subject to repeal at any time. *City of Davenport* v. *Railroad Co.,* 38 Iowa 635; *City of Dubuque* v. *Illinois Central R. Co.,* 39 Iowa 56, in the cases COLE, J.,

dissenting holding the view that the constitutional provision is permissive, and not mandatory.

The Constitution of Alabama of 1968 has a provision nearly like the thirteenth section of article 12 of ours, and it has been interpreted by the supreme court of that state to prohibit the legislature from discriminating, in a revenue law in favor of corporate property, so as to free it from bearing the same taxation which is imposed on individual propery. *Mobile* v. *Stonewall Ins. Co,.* 53 Ala. 570. In this case it is said by the court that the provision was add, ed in itself, self-executing, without the aid, in fact, in restraint of, legislative power, subjecting corporate property to the taxation imposed on individuals; and it is announced in that opinion, that: "If property of a particular kind is subjected to taxation, and owned by a corporation, it must bear the rate of taxation imposed on individuals."

This identical section of the Constitution of 1869, was again before the supreme court of the state of Mississippi for consideration in the case of *Adams* v. *Tombigbee Mills,* 78 Miss. 676. Now, let us take the section and analyze it in the light of this discussion.

First, "the power to tax corporations and their property shall never be surrendered or abridged by any contract to which the state or any political subdivision thereof may be a party."

Note that the prohibition is against, not exemption but the power of taxation. In other words, the legislature was not to contract away its power to tax; that is to say that it was not to pass a law conferring upon any corporation an irrepealable right of exemption and immunity from liability for taxation. The prohibition is not against the temporary exemption from taxation, but against the legislature surrendering its power to tax. The subdivision of the section deals with power to tax. It was not quite satisfied with the language contained in section 13, article 12 of the Constitution of 1869, that the property of the corporation should remain subject to taxation. And your honors will notice that the prohibition is directed to the property of corpora-

tions; individuals were not mentioned, because the legislature would have no authority and would not attempt to assert any authority to contract with an individual that his property should receive an irrepealable immunity from taxation. The danger arose from such contracts being obtained on the part of the corporations.

Second, let us proceed, now, with the analysis. The constitutional convention, however, thought that the legislature should in limited instances, have the right to contract away its taxing power, and we find the following provision: "Except that the legislature may grant exemjtion from taxation in the encouragement of manufacturers and other new enterprises of public utility, extending for a period not exceeding five years, the time of such exemptions to commence from date of charter, if to a corporation; and if to an individual enterprise, then from the commencement of work; but when the legislature grants such exemptions for a period of five years or less, it shall be done by general laws.

It will be noticed that this provision deals both with corporations and individuals, and it was intended to confer upon the legislature the right to surrender even the power of taxation itself, for the limited period mentioned. It did not confer upon the legislature merely the right to grant a repealable exemption from taxation for a limited period, but the legislature got a further and higher right; it got a right to contract with a corporation or an individual erecting such an enterprise as is referred to in the section that the state of Mississippi would, for the period mentioned, upon compliance with the section, have and assert no right to subject the property to taxation. In other words, the exemption was irrepealable. To illustrate the question turn to paragraph (v), section 6878; of Hemingway's Code, and section 6879 of Hemingway's Code. For the period of five years therein mentioned, any factory complying with the provisions of the section would acquire an irrepealable exemption from taxation by the state and county. In other words, under section 182 of the Constitution, the legisla-

ture of the state was authorized, in favor of an individual or corporation to part with its very power to tax, and after any corporation shall have organized and begun the erec-tion of such an enterprise as therein described, after having complied with the legislative requirements therein con-tained, the power to repeal this exemption passes beyond legislative control. It will not be noted that section 6879 provides for a ten-year period of exemption on the part of municipalities. Section 182 of the Constitution of the state does not prohibit longer exemptions on the part of the municipality, it not being a subdivision of the state, but a separate entity.

With this principle in mind, let us turn to the exemption in question. The legislature in the present instance has not pretended to part with its power to tax; it has merely suspended temporarily the exercise of its taxing power, which it may renew tomorrow or next day, exactly as was done in the case of *Adams* v. *Tombigbee Mills.*. The exemp-tion in the case of *Adams* v. *Tombigbee Mills,* was under a provision in the Constitution equally if not more stringent. In this connection we call the attention of the court to the fact that the construction for which we are now contending will render valid the large number of temporary exemptions from taxation made by the legislature of the state of Miss-issippi, under section 6878 of Hemingway's Code, and which are but a perpetuation of a policy which preceded even the Constitution of 1869; and it will at the same time har-monize the construction placed upon such exemptions with the fourteenth amendment to the Constitution of the Unit-ed States. Not only that, but this construction saves, in all of its vigor, the provision of the act now under discus-sion. It is presumed that the legislature had the constitu-tion before it when it passed this law, intended to pass a valid law; passes a law subject to repeal the exemption and place the property back on the assessment roll. It is fundamental that before a law may be declared uncon-stitutional, its contravention of the constitution must ap-pear beyond all reasonable doubt. It is the duty of the

court, if consistent with sound reason, to effectuate the statute, and harmonize it with the organic law.

Now, what we have said about the constitutionality of the section of the code in question removes all difficulty in respect to the exemption of the property from the tax for the consolidated school. The legislature can at any time it sees fit meet to repeal the exemption in whole or in part, and render the property liable for the unpaid portion of these bonds, both principal and interest. Therefore, this question should give the court no concern.

We respectfully ask that the case be affirmed.

HOLDEN, J., delivered the opinion of the court.

This is an appeal by the board of supervisors of Harrison county from a judgment rendered by the circuit court exempting from taxation the property owned and used exclusively for educational purposes by the appellee, Gulf Coast Military Academy, a chartered educational institution operated for profit.

The main question presented by the appeal is whether a chartered educational institution operating for private profit can successfully claim its property exempt from taxation which is used directly and exclusively by the institution for the education of youth, or whether such exemption (section 4251, Code of 1906; section 6878, Hemingway's Code) goes only to educational institutions not operated for profit. A consideration of the question presented involves directly, or incidentally, and brings into review, sections 112, 181, and 182 of our Constitution of 1890.

The pertinent part of the statute, paragraph D, under which the exemption is claimed, reads as follows:

"All property, real or personal belonging to any college or institution for the education of youth, used directly and exclusively for such purpose," shall be exempt from taxation.

In the Codes of 1880 and 1892 the exemption allowed was only to such institutions operated "not for profit." But it will be observed that the legislature amended the statute so as to make the exemption apply to the property of all such educational institutions used directly and exclusively for such purpose, regardless of whether the institution was operated for profit or not. Therefore we are led to conclude that the property here involved, used by the appellee academy exclusively for educational purposes, even though the institution is operated for profit, is exempt from taxation. The policy of extending exemptions to persons and corporations operating educational institutions in our state is a matter of legislative discretion, with which we have no concern; and so long as the legislature acts within the bounds of constitutional restrictions its power to tax or exempt property is, generally speaking, without limit.

But it is contended by the appellant board of supervisors that the act exempting corporate educational institutions operated for profit is void, because in conflict with three sections of the Constitution, to-wit:

That it conflicts with the "uniform and equal" taxation clause of section 112.

This view is untenable. The section does not require that all property be taxed, and therefore does not prohibit exemptions. *Miss. Mills* v. *Cook,* 56 Miss. 40; *Brennan* v. *Insurance Co.,* 70 Miss. 531, 13 So. 228; *Adams* v. *Railroad,* 77 Miss. 194, 24 So. 200, 317, 28 So. 596, 60 L. R. A. 33; *Adams* v. *Tombigbee Mills,* 78 Miss. 691, 29 So. 473; *Vicksburg Bank* v. *Worrell,* 67 Miss. 47, 7 So. 219.

Second, that it violates the provision of section 181 which requires that "the property of all private corporations for pecuniary gain shall be taxed in the same way and to the same extent as the property of individuals." It is argued that the appellee institution is a private corporation for pecuniary gain, and that it must be taxed to the same extent as the property of individuals, and that this clause should be construed to mean that all private

corporations for pecuniary gain should be taxed, regardless of the character or class of the property or corporation involved.

We cannot agree with this construction of the section. It seems clear to us, and it has been so held by this court, that this section of the Constitution means, and was intended only to require, that the property of private corporations for gain should be taxed in the same way and to the same extent as the property of an individual. Its plain purpose was to prevent discrimination in taxation as between corporations and individuals; that, where one is taxed, the other, in the same class, cannot escape; that, when one is not exempted by the legislature, the other must not be. The simple language of the section, that property of private corporations shall be taxed like the property of individuals, does not mean that the property of all corporations must be taxed; but the requirement is that the state must tax the corporation the same as the individual under the same circumstances. That is all it means, and that is true here. *Adams* v. *Railroad Co.,* 77 Miss. 273, 24 So. 215, 317, 28 So. 956, 60 L. R. A. 33; *Jackson* v. *Preston,* 93 Miss. 366, 47 So. 547, 21 L .R. A. (N. S.) 164.

Third. It is further urged by the appellant that section 182 of our Constitution prohibits the exemption to the appellee, because it is contrary to the provision that: "The power to tax corporations and their property shall never be surrendered or abridged by any contract or grant to which the state or any political subdivision thereof may be a party, except," etc.

It is claimed this section prohibits the exemption of property belonging to any corporation; that the legislature is without power to grant exemptions to corporations, regardless of class or character of the property.

We do not so understand the meaning of this section. The purpose of the provision was to prevent the legislature from irrepealably surrendering by contract or grant the power to tax corporations. Granting an exemption of

corporation property, which exemption may be repealed at any session of the legislature, is certainly not a surrender or an abridgement, by contract or grant, of the power to tax the property of corporations. In other words, the power to tax corporations is not surrendered by a repealable legislative act of exemption. The makers of the Constitution very probably had in mind a restriction against perpetual grants of exemptions, perpetual immunity, and an irrepealable surrender of the power to tax, granted by contract in the charter of corporations. No doubt this was the evil intended to be provided against by the section. The section does not prohibit the exemption allowed in this case. *Miss. Mills* v. *Cook,* 56 Miss. 40; *Adams* v. *Tombigbee Mills,* 78 Miss. 676, 29 So. 470.

It is contended by the appellant that the appellee institution does not come within the statutory exemption, because it teaches military and naval science as well as a literary education, and that some of the buildings on the property of the appellee are used for dormitories, therefore that the property is not used exclusively for educational purposes.

We disagree with this contention, because the record shows that the academy is an educational institution, and that all of its property is used exclusively and directly in education of the youth; and we hold that the proof in this case shows the appellee institution is such as comes within the meaning of the exemption statute involved.

There is a further contention by the appellant that the property here in question cannot be exempted because there is a bonded indebtedness in the school district in which this property is located, and that such bonded indebtedness is a lien upon this school property.

This question cannot be properly raised by this record for obvious reasons, and we decline to pass upon it; but it may not be amiss to point out that the general rule may be that there is no lien upon this exempt property for general *ad valorem* taxes to satisfy the bonded indebtedness. The lien probably in the mind of counsel for ap-

pellant is the lien given upon property for special improvements made whereby the property is specially benefited.

Counsel for appellant points out and complains that the exemption in such cases as the one before us is unjust and illegal, because the property acquired by the educational institution is so large, and may further increase, that the taxation against the remaining property in the district will be greatly increased, and might go to the extent of practical confiscation.

We appreciate the view entertained by counsel, and it is true that in the course of time this educational institution may acquire and have declared exempt all of the real property lying in the district. However, the courts can offer no remedy or solace in the premises; it is a matter to be dealt with solely by the legislature. It may be that our legislative policy has been too liberal in exempting millions of dollars worth of property in our state which, by rules of fairness and equity in the distribution of the tax burden, should not have been allowed; but we cannot deal with the question in this tribunal. The legislature has the only power and discretion, and it is, generally speaking, without limit to tax or exempt property, provided in doing so it stays within the restrictions of the organic law.

The judgment of the lower court is affirmed.

*Affirmed.*