MILLER, STATE TAX COLLECTOR, *v.* LAMAR LIFE INS. CO.

SAME *v.* MISSISSIPPI FIRE INS. CO.

SAME *v.* BANKERS' & MERCHANTS' FIRE INS. CO.

(Division A.   Nov. 24, 1930.)

[131 So. 282.   Nos. 28803-28805.]

Franklin, Easterling & Rosenthal, of Jackson, for appellant.

Wells, Jones, Wells & Lipscomb, and **J. M. Stevens**, of Jackson, for appellees.

760

J. Morgan Stevens, of Jackson, for appellee.

Argued orally by **Simon Rosenthal**, for appellant and by **J. M. Stevens**, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellant, W. J. Miller, state tax collector, filed three separate suits in the circuit court of Hinds county, one against the Lamar Life Insurance Company, one

against the Mississippi Fire Insurance Company and one against the Bankers' & Merchants' Fire Insurance Company, seeking to have assessed against these defendants an ad valorem tax on all of the real estate loans made by them out of their reserves at a greater rate of interest than 6 per cent per annum, and existing as of February 1, 1926, 1927, and 1928. Each of these suits involve identically the same legal propositions, and they have been considered together and will be disposed of in this opinion.

The board of supervisors of Hinds county declined to make the assessment against these companies on the ground that such property was exempt from taxation under the provisions of chapter 184, Laws of 1922, and chapter 261, Laws of 1926. From this decision of the board of supervisors the state tax collector appealed to the circuit court, where, on the hearing of the cause, the circuit judge likewise held that such property was exempt from ad valorem taxes under the above-mentioned statutes, and from the judgment entered the state tax collector appealed to this court.

Chapter 184, Laws of 1922, which was in effect on February 1, 1926, when the taxes attempted to be assessed for the year 1926 accrued, is as follows:

"An act to aid and encourage insurance companies incorporated or organized under the laws of the state of Mississippi and to exempt such companies from taxation except on real estate for a period of five years.

"Exempting domestic insurance companies from certain taxes.

"Section 1. Be it enacted by the Legislature of the State of Mississippi, That in addition to the property already exempt from taxation, all insurance companies or associations organized or incorporated under the laws of the state of Mississippi and maintaining its domicile therein, shall be exempt for a period of five years from

all taxes of whatsoever kind or character except ad valorem taxes on real estate, and privilege taxes.''

By chapter 261, Laws of 1926, which was approved and became effective on March 12, 1926, the five-year limitation in the exemption granted to domestic insurance companies was removed, and the exemption was enlarged to include ad valorem taxes on their real estate, the title and first section of the said act reading as follows:

''An act to aid and encourage insurance companies incorporated under the laws of the state of Mississippi and to provide the kind and method of taxation of such companies.

''Method of taxation of domestic insurance companies.

''Section 1. Be it enacted by the Legislature of the State of Mississippi, That in addition to the property already exempted from taxation, all domestic insurance companies shall be exempt from all taxes of every kind or character, state, county, municipal and other taxing districts; provided, however, that such domestic insurance companies shall not be exempt by this act from payment of the privilege tax imposed by section 2 and allowed by section 3 of this act, and from payment of the state income tax provided by the state income tax law.''

Section 2 of the said act of 1926 imposes upon all domestic insurance companies the payment of an annual premium tax to the state, and also the payment of the full amount of the fire marshal's tax required by law, while section 3 of the act authorizes and empowers the county and the municipality in which any domestic insurance company has its legal domicile or principal place of business to each levy and collect annually the privilege tax on such domestic insurance companies ''not to exceed forty per centum (40%) for said county and sixty per centum (60%) for said municipality of the said privilege tax imposed by this act upon the same company,'' the ag-

gregate amount of the premium tax thus authorized to be levied and collected by the state, county, and municipality being the same as the premium tax imposed on foreign insurance companies.

The contentions of the appellant are: (1) That, if said acts are valid, they do not in any way apply to solvent credits and money loaned at a greater rate of interest than six per centum, the same not constituting an insurance business; and (2) that chapter 184, Laws of 1922, and section 1, chapter 261, Laws of 1926, are unconstitutional, null, and void.

The first contention of the appellant, as stated above, that is, that the above-quoted statutes do not exempt a domestic insurance company from taxes on solvent credits, or money loaned at a greater rate of interest than six per cent per annum, for the reason that such solvent credits do not primarily constitute an insurance business, or any part thereof, is, in our opinion, not maintainable. The said act of 1922 exempts domestic insurance companies from all taxes of whatsoever kind or character except ad valorem taxes on real estate and privilege taxes, while the act of 1926 exempts said insurance companies from all taxes of every kind and character except privilege and income taxes. The effect of these statutes is to exempt said insurance companies from all ad valorem taxes on their real and personal property of every kind and character. In order for an insurance company to carry out its contracts of insurance, pay the benefits contracted for, and maintain its solvency, it is important, and, in fact, necessary, that its reserves, if not a part of its capital stock and surplus, be invested in interest-bearing securities, or some form of property returning a percentage of increase by way of interest, or otherwise. In recognition of the importance and necessity of so investing the funds of the insurance companies, the Legislature enacted section 5152, Code 1930, authorizing and requiring said companies to invest their

capital, surplus, and other funds in bonds, or notes secured by mortgages or deeds of trust on unencumbered real estate, various classes of municipal bonds, and other named securities, including corporate stocks and bonds and other evidences of indebtedness. So by virtue of the provisions of this statute, as well as by the necessities of the situation and the demands of good business policy, domestic insurance companies are required to make loans out of its capital stock, surplus, and reserves, and to otherwise so invest its surplus and reserves as to receive a substantial return on the money invested; and the interest-bearing securities, or solvent credits taken and acquired in making such investments, are so intimately connected with the insurance business as to become an essential element or part thereof. Such securities being the personal property of the companies owning them, and being a necessary and integral part of the insurance business, are clearly exempt from taxation by the express provisions of the above-quoted statutes.

The appellant next contends that the said chapter 184, Laws of 1922, and section 1 of chapter 261, Laws of 1926, are unconstitutional, and therefore null and void, the contention being that these statutes are violative of sections 61, 87, 90 (h), 112, 181, 182, and 192 of the state Constitution of 1890, and article 4, section 2, clause 1, and the Fourteenth Amendment to the Constitution of the United States.

The appellant offers no discussion or argument to sustain his contention that these statutes violate sections 61, 87, 90 (h), and 192 of the state Constitution, but confines his arguments to alleged violations of the provisions of sections 112, 181, and 182 of said Constitution. In determining the constitutionality of these two statutes, there is no material difference whatever in the legal principles applicable to each of them. The effect of chapter 184, Laws of 1922, was to exempt from taxation all the personal property of domestic insurance com-

panies, while chapter 261, Laws of 1926, merely extends the exemption so as to remove the five-year limitation thereon and to embrace therein the real property of said insurance companies, as well as their personal property.

In the case of City of Jackson v. Mississippi Fire Insurance Co., 132 Miss. 415, 95 So. 845, 847, the constitutionality of chapter 184, Laws of 1922, was challenged, and elaborate and exhaustive arguments were made to establish the contention that it violated each of the above-stated sections of the state Constitution. In the opinion rendered in that case, the pertinent parts of the Constitution of 1890 were set forth, and the court declared that the contention that the statute was repugnant to sections 61, 87, 90 (h), or 192 was so obviously without merit as to require no discussion. In response to the contention and argument that the act of 1922 violated sections 112, 181, and 182 of the Constitution of 1890, the court there discussed fully the meaning and effect of these constitutional provisions, and, in holding that it violated none of these sections, the authorities bearing upon the question were cited and analyzed, and the reasons of the court for so holding were fully stated. Every contention made in the case at bar was made in this former case. The legal principles involved and the questions presented for consideration and decisions in determining the constitutionality of chapter 261, Laws of 1926, are identical with those presented in the consideration of the constitutionality of chapter 184, Laws of 1922, and, consequently, the case of City of Jackson v. Mississippi Fire Insurance Co., supra, is controlling upon all questions presented in the case at bar involving any asserted invalidity of the two statutes on account of being in conflict with any of the provisions of the state Constitution, and requires a holding that none of its provisions are violated by either of these statutes.

The appellant next makes the point that the two statutes of 1922 and 1926 violate article 4, section 2, clause

1, of the Constitution of the United States, which provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." Counsel for the appellant do not press this point in the argument, but, if it is the contention of counsel that these acts violate this provision on account of discrimination against individuals who are citizens of foreign states, there can be no merit in the contention, for it was expressly held in the case of City of Jackson v. Mississippi Fire Insurance Co., supra, that, under the statutes of this state regulating the insurance business, an individual cannot engage in such business, but it can only be carried on in this state by corporations or associations that are for all practical purposes corporations. If the contention is that these statutes violate this provision of the Constitution because they discriminate against foreign insurance corporations, there can be no merit therein, as it has been frequently held by the Supreme Court of the United States that a corporation is not a citizen within the meaning of this section. In the case of Blake v. McClung, 172 U. S. 239, 19 S. Ct. 165, 173, 43 L. Ed. 432, the court said:

"But it is equally well settled, and we now hold, that a corporation is not a citizen within the meaning of the constitutional provision that 'the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states' (Paul v. Virginia, 8 Wall. 168, 178, 179 [19 L. Ed. 357, 359, 360]; Ducat v. Chicago, 10 Wall. 410, 415 [19 L. Ed. 972, 973]; Liverpool Ins. Co. v. Massachusetts, 10 Wall. 566, 573 [19 L. Ed. 1029, 1031]). The Virginia corporation, therefore, cannot invoke that provision for protection against the decree of the state court denying its right to participate upon terms of equality with Tennessee creditors in the distribution of the assets of the British corporation in the hands of the Tennessee court."

The final contention of the appellant is that these statutes are repugnant to the equal protection of the laws clause of the Fourteenth Amendment to the Federal Constitution in that it discriminates against foreign insurance corporations doing business, or that may be admitted to do business, in this state. In reply to this contention, the appellees contend that the appellant, the state tax collector, cannot raise any questions of discrimination because he is not within the class that is in any wise affected or prejudiced by the enforcement of the statute. This contention of the appellees was upheld in the case of City of Jackson v. Mississippi Fire Insurance Co., supra; and this is the general rule. However, in the later case of Miller, State Tax Collector, v. C. & G. Railway Co., 154 Miss. 317, 122 So. 366, this rule was modified to the extent of recognizing, as an exception thereto, cases where there is no probability of the validity of the statute being challenged by one of the class discriminated against, or, if so challenged, it will be unnecessary for the court to decide that question. In event a foreign insurance corporation discriminated against by these statutes challenged the validity thereof on the ground that it is an arbitrary discrimination against it, it would not be necessary for the court to decide the question, for, if these statutes should be held void, it would not in any way benefit such complaining insurance company or affect the amount of taxes to be paid by it. It thus appears that this case comes within the stated exception, and the state, through its duly constituted tax collector, can challenge the validity of these statutes affecting its revenues.

In the case of Davidson v. City of New Orleans, 96 U. S. 97, 105, 24 L. Ed. 616, the court said that "the Federal Constitution imposes no restraints on the States" in regard to unequal taxation, while in Magoun v. Illinois Trust Co. & Sav. Bank, 170 U. S. 283, 18 S. Ct. 594, 599, 42 L. Ed. 1037, the court said: "Of taxation

(and the case at bar is of taxation) Mr. Justice BRADLEY said, in Bell's Gap R. Co. v. Pennsylvania, supra [134 U. S. 232, 10 S. Ct. 533, 33 L. Ed. 892], and Mr. Chief Justice FULLER in Giozza v. Tiernan, 148 U. S. 657, 13 S. Ct. 721 [37 L. Ed. 599], that the fourteenth amendment was not intended to compel the state to adopt an iron rule of equal taxation." Again in the case of Royster Guano Co. v. Virginia, 253 U. S. 412, 40 S. Ct. 560, 561, 64 L. Ed. 989, Mr. Justice PITNEY, speaking for the court, said:

"It is unnecessary to say that the 'equal protection of the laws' required by the Fourteenth Amendment does not prevent the states from resorting to classifications for the purposes of legislation. Numerous and familiar decisions of this court establish that they have a wide range of discretion in that regard. But the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike. The latitude of discretion is notably wide in the classification of property for purposes of taxation and the granting of partial or total exemptions upon grounds of policy."

In 12 R. C. L. p. 52, it is said that a state "may discriminate between its own corporation and those of other states, or it may discriminate between kinds of foreign corporations, as for instance, by imposing greater burdens on foreign railroads, banking or insurance companies and building and loan associations than it does on general manufacturing, mercantile or business corporations," and this text is supported by many authorities there cited in the footnotes. It is the province and duty of the Legislature to classify for purposes of taxation, and, if the classification is not wholly unreasonable and arbitrary, and the statute is uniform in its operation on all the members of the class to which it is made

applicable, no one is denied the equal protection of the laws guaranteed by the Federal Constitution; and, as said in the case of Rast v. Van Deman & Lewis, 240 U. S. 342, 36 S. Ct. 370, 374, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455: "a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. . . . It is the duty and function of the legislature to discern and correct evils, and by evils we do not mean some definite injury, but obstacles to a greater public welfare. . . . And, we repeat, 'it may make discriminations if founded on distinctions that we cannot pronounce unreasonable and purely arbitrary.' "

The discrimination created by these statutes, if any, arises out of the grant of an exemption to domestic insurance companies from certain taxes, and the only limitation upon the legislative power to exempt property from taxation is that "there must underlie the exercise of the power 'some principle of public policy that can support a presumption that the public interest will be subserved by the exemption granted' . . . and the classification of the property exempted 'must be based on some reasonable ground, and some real difference which bears a just and proper relation to the object sought to be accomplished.' " City of Jackson v. Mississippi Fire Insurance Co., supra, and authorities there cited.

The Legislature must necessarily be the judge in the first instance of the advantages to the public welfare to be secured by an exemption of property from taxation, and of the necessity of such exemption, as well as the reasonableness of any classification made for that purpose. The statutes here under attack had their inception at a time when the old line or foreign fire insurance companies had withdrawn from the state, and there was practically an insurance famine which threatened

disaster. Domestic insurance companies had not theretofore been fostered and developed, and there were few such companies in the state. It may have appeared, and probably did appear, to the Legislature that the needs of the people of the state required the establishment and development of domestic insurance companies to guarantee to the people insurance on their lives and property. It may have appeared to it that the classification was reasonable and justified on the ground that, by the fostering care and encouragement and aid thus granted, the establishment and success of domestic companies would be assured, thereby reducing the cost of insurance to the people of the state and causing vast sums of money which had theretofore been sent out of the state in payment of premiums for insurance to be retained therein for investment, and for utilization in the development of the resources of the state. Other reasons for the exemption might be imagined and assigned, and we are unable to say that the classification is wholly unreasonable and arbitrary, and therefore repugnant to the Fourteenth Amendment to the Federal Constitution.

The judgment of the court below will therefore be affirmed.

Affirmed.