[No. 17308.   Department One.   January 5, 1923.]

# F. A. Cline, *Respondent*, v. Northern Pacific Railway Company, *Appellant*.[1]

Railroads (60, 61)—Accidents at Crossings — Negligence — Sounding Whistle—Rate of Speed—Question for Jury. The negligence of a railroad company, in a collision with an automobile at a grade crossing, is a question for the jury, where it appears that the view of approaching trains was obscured by the maintenance of box cars on the side tracks, and there was evidence from which the jury could determine that the engineer did not continuously ring the bell or sound the whistle as required by Rem. Comp. Stat., § 2528, making it a misdemeanor for him to fail to do so, and that the train was operated at an excessive speed.

Damages (112)—Value—Price of Car—Evidence—Admissibility. A verdict for $2,691.66 for damages in a collision at a grade crossing is not excessive, where it appears that plaintiff suffered injury, and his automobile was totally destroyed, and the price paid for it was shown, which is strong evidence of its actual value.

Appeal from a judgment of the superior court for Walla Walla county, Mills, J., entered November 28, 1921, upon the verdict of a jury rendered in favor of the plaintiff, in an action for injuries sustained in a collision at a railroad crossing.   Affirmed.

*Geo. T. Reid, J. W. Quick, L. B. daPonte, John H. Pedigo*, and *James P. Neal*, for appellant.

*Sharpstein, Smith & Sharpstein*, for respondent.

Holcomb, J.—The motion to strike the statement of facts and dismiss the appeal, made first on noticed motion, and passed until the hearing on the merits, before which time the record was amplified by a supplemental transcript, is denied because of our disposition of the case on the merits, preferring to dispose of the case on the merits rather than upon the

[1]Reported in 211 Pac. 878.

somewhat confusing record from the court below, on the motion to dismiss.

The action is one for damages to person and property suffered in a collision between an automobile, operated by respondent, and a railroad train, operated by appellant. There was a verdict in favor of respondent in the sum of $2,691.66, total damages.

The collision occurred at a crossing just west of the town of Clyde, where a county road in Walla Walla county crosses a branch line of appellant's railway running from Eureka to Clyde, at 11 o'clock in the forenoon of September 13, 1920.

Respondent in his complaint set forth, as grounds of negligence on the part of appellant:

(1) Maintenance of box cars on a side track near the crossing.

(2) The maintenance of a warehouse and elevator near the crossing in such a manner as to obstruct the view of the track in a northeasterly direction so that, in approaching the crossing trains could not be observed by travelers on such highway.

(3) The negligent and careless operation over such public crossing of appellant's train at a speed of about thirty miles an hour.

(4) The failure to ring the bell or sound the whistle or give notice of the approach of the train, and to continue the ringing of such bell or sounding of such whistle until the locomotive crossed the highway as required by statute.

By answer, appellant put in issue all of the allegations except that it admitted the location of the railway crossing at grade, and admitted that respondent and his automobile were injured on the day specified, but denied that either the respondent or his automobile were injured or damaged in the amount claimed, and

further alleged that respondent was guilty of contributory negligence.

Appellant contends, and earnestly and ably argues, that there was no evidence of negligence on the part of appellant in the operation of its train, or in the manner in which the crossing was maintained, and that it appears from the evidence that respondent was guilty of contributory negligence to such an extent that he is prohibited by law from recovering damages for injury to himself or to his automobile. It is contended that, while the evidence shows respondent to have been injured, it shows such injury was not permanent or serious, and that the damage to his automobile was not ascertained.

Motions were unsuccessfully made for nonsuit; for directed verdict in favor of appellant at the close of all the evidence, for judgment n. o. v., or for a new trial, and from the denial of these motions and the entry of judgment on the verdict, the appellant bases its four assignments of error.

Appellant very methodically states and argues its propositions, but admits that every case must stand on its own facts, and that no general rule can be made which will be decisive of all cases. It contends that the evidence in this case brings it within the principles enunciated in the following cases cited: *Benedict v. Hines,* 110 Wash. 338, 188 Pac. 512; *Golay v. Northern Pac. R. Co.,* 105 Wash. 132, 177 Pac. 804, 181 Pac. 700; *Bowden v. Walla Walla Valley R. Co.,* 79 Wash. 184, 140 Pac. 549; *Cable v. Spokane & Inland R. Co.,* 50 Wash. 619, 97 Pac. 744, 23 L. R. A. (N. S.) 1224; *Clifford v. Oregon-Washington R. & Nav. Co.,* 90 Ore. 490, 176 Pac. 594; *Sadler v. Northern Pac. R. Co.,* 118 Wash. 121, 203 Pac. 10; *Lohr v. Paine,* 115 Wash. 691, 196 Pac. 655, and *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 179 Pac. 848.

The testimony was conflicting, but it may be said that a case was made by the respondent to go to the jury substantially as follows:

Trains on the branch road involved are somewhat infrequent, and are ordinarily operated at a medium speed, the track having a great many curves until the road approaches near Clyde. The county highway upon which respondent was driving extends easterly along the east side of the track and near the crossing in a northeasterly direction. Appellant, at or near Clyde, maintains a side track. Respondent was intending to cross the railroad tracks at Clyde. When he approached near the crossing, he was operating his car at a speed of ten miles an hour. It is necessary to make a sharp turn to the left near the bulk grain elevator maintained by appellant on its right of way. Appellant also maintains, as shown by the photographs, a number of warehouses for a distance of approximately one-half mile from the crossing. It is practically impossible for a traveler on the highway to see a train at any distance, or to see any smoke emitted from the same, on account of the warehouses, and only the tops of the telegraph poles are visible for a distance of more than a half mile from the crossing to a traveler on the road.

On the day in question, appellant had maintained, on its right of way on the side track, which was some nine or ten feet from the main track, to the left of the crossing, a box car; and to the right of the crossing, northerly, two other box cars, one near the bulk grain elevator, which stands near the crossing, and the other between the grain elevator and the warehouse next thereto, in a northerly direction. The train operated on this track was a work train.

Respondent had some knowledge of the operation of trains over this branch line, but no knowledge that

a work train was being operated during the week in which the collision occurred. As he approached the crossing for half a mile back, he was looking and listening. He could not see the track to the north on account of the grain elevator and the warehouses, until he got to a position where he would make the turn to cross the track, and behind the grain elevator, and there the view was obstructed by the box car. He looked at every place available and immediately before turning on the side track he slowed his car down, and looked in both directions, at which time the box car to the left was not an obstruction to his view. At about the time he attempted to take the slight grade up to the main track, he slackened his speed and looked in both directions and listened, but was unable to see or hear any train, and heard no whistle. He then increased his speed to take the slight grade, to possibly twelve miles an hour, until he was near the side track. He did not see any train, and heard no whistle until he got in a position on the side track within a few feet of the oncoming train, because he could not see beyond the box car, nor could he have discovered the fact, nor the extent to which the box car obscured his view. The train was being operated at a much greater speed than ordinarily on this branch line. The speed was estimated by various witnesses at from 20 to 40 miles per hour. One witness testified that it was going thirty miles an hour.

Rem. Comp. Stat., § 2528, provides that,

"Every engineer driving a locomotive on any railway who shall fail to ring the bell or sound the whistle upon such locomotive, or cause the same to be rung or sounded at least eighty rods from any place where such railway crosses a traveled road or street on the same level (except in cities), or to continue the ringing of such bell or sounding of such whistle until such

locomotive shall have crossed such road or street, shall be guilty of misdemeanor.''

Under the evidence given in this case, and under the complaint, and the above cited statute, the jury might have found that the whistle or bell was not sounded or rung continuously. And where the obstructions to the view of the railroad track were as shown in this case, the ringing of the bell or the sounding of the whistle until the crossing was reached was more necessary than under other conditions, and the jury may well have concluded that such failure was the proximate cause of the injury. Whether the train was being operated at an excessive speed under the circumstances here shown, was also a question to be considered by the jury as to the cause of the injury.

We conclude, therefore, that this is not a case falling within the cases relied upon by appellant, but falls within the principles stated in the following cases: *Kent v. Walla Walla Valley R. Co.,* 108 Wash. 251, 183 Pac. 87; *Coons v. Olympia Light & Power Co.,* 111 Wash. 677, 191 Pac. 769; *Brandt v. Northern Pac. R. Co.,* 105 Wash. 138, 177 Pac. 806, 181 Pac. 682; *Steele v. Northern Pac. R. Co.,* 21 Wash. 287, 57 Pac. 820; *Averbuch v. Great Northern R. Co.,* 55 Wash. 633, 104 Pac. 1103.

As to the amount of damages complained of by appellant, respondent offered evidence as to the injury suffered by him, and it was for the jury and not he to say what the damages amounted to in dollars and cents, within reasonable limits, which do not appear to have been exceeded in this case. It is shown that the automobile was totally destroyed, and was worth nothing at all after the accident, and the price paid by respondent was shown. No evidence was offered by appellant as to the value of the automobile, or the damages thereto, and the evidence of the price

was admitted without objection. The price paid for it, while not conclusive, was strong evidence of its actual value. *Abrahamson v. Cummings,* 65 Wash. 35, 117 Pac. 709.

The judgment is affirmed.

PARKER, C. J., BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.